**BETAL ENVIRONMENTAL CORPORATION,**
Plaintiff,

v.

**LOCAL UNION NUMBER 78, ASBESTOS, LEAD & HAZARDOUS WASTE LABORERS, affiliated with the Mason Tenders District Council of Greater New York, LUINA, AFL–CIO, and York Hunter Construction, Inc. Defendants**

No. 00CIV.2018(CBM).

United States District Court,
S.D. New York.

Nov. 21, 2000.

Richard B. Ziskin, Law Offices of Robert M. Ziskin, Smithtown, NY, for Plaintiff.

Lowell Peterson, Meyer, Suozzi, English & Klein, P.C., for Defendant Local Union 78, Asbestos, Lead & Hazardous Waste Laborers, affiliated with the Mason Tenders District Council of Greater New York, LIUNA, AFL–CIO.

Steven Cramer, Bauman Katz & Grill LLP, for Defendant York Hunter Construction, Inc.

### MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, Betal Environmental Corporation ("Betal"), filed this labor action under section 303 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 187, against defendant, Local Union 78, Asbestos, Lead & Hazardous Waste Laborers, affiliated with the Mason Tenders District Council of Greater New York, LIUNA, AFL–CIO ("Local 78"). Against Local 78, plaintiff seeks damages for activity and conduct defined as an unfair labor practice in violation of section 8(b)(4) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. Against defendant York Hunter Construction, Inc. ("York"), plaintiff brings a breach of contract claim for terminating plaintiff's contract with York and failing to pay plaintiff $166,775. Plaintiff also seeks, in its sixth cause of action, a declaratory judgment voiding a provision in the collective bargaining agreement between Local 78 and York.[1]

Defendants Local Union 78 and York now move this court to dismiss plaintiff's sixth cause of action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons stated below, this court GRANTS defendants' motion.

### I. BACKGROUND

Plaintiff is a subcontractor in the business of abating hazardous materials, including asbestos and asbestos-containing materials. Local 78 is a labor union which represents employees in the construction industry in New York City, including asbestos removal workers. York is a construction company and is a member of a multi-employer contractors association.

York entered into a written agreement on September 15, 1999 to use plaintiff as a subcontractor to perform hazardous waste removal work. Plaintiff alleges that it performed its work in compliance with the agreement, but it has not received payment for its work from York.

Plaintiff alleges that Local 78 violated section 8(b)(4) of the NLRA by encouraging plaintiff's employees and York's employees to engage in a strike and threatened, coerced, or restrained plaintiff's employees and York's employees in order to force York Hunter to cease dealing with plaintiff at The New York Public Library for the Performing Art ("the Library"). Plaintiff also alleges that Local 78 threatened to picket the entrance to the Library. Plaintiff alleges that as a

---

1. Plaintiff's fourth and fifth causes of action for permanent injunctive relief against Local 78 and punitive damages against Local 78, respectively, were dismissed pursuant to stipulation of the parties on October 17, 2000.

result of Local 78's actions, York terminated its agreement with plaintiff.

Local 78 and York became parties to a collective bargaining relationship pursuant to section 8(f) of the NLRA. Article II, Section 1 of the collective bargaining agreement provides as follows:

> The Employer agrees that it will not subcontract "on site" bargaining unit work as defined in Article IV unless the Employer receiving the subcontract agrees to be bound by the terms of this Agreement and/or has an Agreement with the Union having jurisdiction over such work under Article IV of this Agreement. When the Employer subcontracts any such work, the Employer shall be responsible for the subcontractor complying with all provisions of this Agreement.

## II. DISCUSSION

 Plaintiff's claim for declaratory judgment relates to the collective bargaining agreement between Local 78 and York. Plaintiff seeks to have Article II, Section 1 of the collective bargaining agreement declared void and unenforceable as a prohibited "hot cargo" clause [2] under section 8(e) of the NLRA, 29 U.S.C. § 158(e) [3]. Defendants' contend that this court lacks subject-matter jurisdiction over plaintiff's claim.

Section 303 of the LMRA provides for jurisdiction in the district courts over any claim of injury arising out of a labor organization's alleged violation of section 8(b)(4) of the NLRA declaring certain types of strikes, threats and boycotts to be unfair labor practices.[4] Among other things, section 8(b)(4) makes it an unfair labor practice to force or require an employer to enter into an agreement prohibited by section 8(e). Otherwise, section 8(b)(4) does not refer to section 8(e).[5]

In this case, there are no allegations that defendants tried to force or require

---

**2.** A "hot cargo" clause is an agreement "whereby a union and an employer agree that the union will not be required to handle goods manufactured or transferred by another employer with which the union has a dispute or whom the union considers to be unfair to organized labor." Note, *Clarifying the Work Preservation/Work Acquisition Dichotomy Under Sections 8(b)(4)(B) and 8(e) of the National Labor Relations Act: National Labor Relations Board v. International Longshoremen's Association*, 35 CATH. U.L. REV. 1061, 1063–64 (1986).

**3.** Section 8(e) provides, in part:

> It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement ... whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any employer, or to cease doing business with any other person, and any contract or agreement entered into ... containing such an agreement shall be to such extent unenforcible [sic] and void: Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construc-

tion, alteration, painting, or repair of a building, structure, or other work ...."
29 U.S.C. § 158(e).

**4.** Section 303 provides in part:

> (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.
> (b) Whoever shall be injured in his business or property by reason or [sic] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.
> 29 U.S.C. § 187.

**5.** Section 8(b)(4) provides in part that it shall be an unfair labor practice for a labor organization or its agents:

> (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or

plaintiff to enter into the collective bargaining agreement. In fact, plaintiff is not even a party to the collective bargaining agreement. Plaintiff, therefore, cannot assert a violation of section 8(b)(4) with regard to the alleged "hot cargo" clause. The question that this court must now resolve is whether section 303 grants the district court jurisdiction over the kind of section 8(e) violation asserted by plaintiff.

This court notes at the outset that lack of district court jurisdiction over such claims does not mean that violations of section 8(e) are without redress. It is the general rule that "neither state nor federal courts have jurisdiction over suits directly involving 'activity (which) is arguably subject to § 7 or § 8 of the [NLRA].'" *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (*quoting San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)). Jurisdiction over these areas falls instead to the National Labor Relations Board ("NLRB" or "the Board").[6] However, Congress itself has carved out exceptions to the NLRB's exclusive jurisdiction, notably section 303's grant of jurisdiction

for those injured by a violation of section 8(b)(4) to recover damages even though such unfair labor practices are also remediable by the Board and section 301's grant of jurisdiction over suits for breach of a collective bargaining agreement regardless of whether the particular breach is also an unfair labor practice within the jurisdiction of the Board.[7] *See Vaca v. Sipes*, 386 U.S. at 179–80, 87 S.Ct. 903 (*citing Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)).

Notably, section 303's grant of jurisdiction is limited specifically to violations of section 8(b)(4) and does not extend to violations of section 8(e), other than those dealing with coercion. In his dissenting opinion in *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100, etc.*, 421 U.S. 616, 638–55, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975), Justice Stewart provides a thorough account of the legislative history behind sections 303, 8(b)(4), and 8(e), noting as follows:

> § 8(e)'s prohibition of 'hot cargo' agreements was not added to the Act until 1959, and ... § 303 was not then

---

> otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or
> (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
> (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section ....
> 29 U.S.C. § 158(b)(4).

**6.** The Court explained Congress' jurisdictional decisions as follows:

> In enacting the National Labor Relations Act and later the Labor Management Relations Act, 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal. Congress evidently considered that centralized administration of specially designed procedures was neces-

> sary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.'
> *Vaca v. Sipes*, 386 U.S. at 179, 87 S.Ct. 903 (*quoting Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F.L.), et al.*, 346 U.S. 485, 490–91, 74 S.Ct. 161, 98 L.Ed. 228(1953)).

**7.** Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
> 29 U.S.C. § 185(a).

amended to cover § 8(e) violations standing alone. But as part of the 1959 amendments designed to close 'technical loopholes' perceived in the Taft–Hartley Act [the LMRA], Congress amended § 8(b)(4) to make it an unfair labor practice for a labor organization to threaten or coerce a neutral employer, either directly or through his employees, where an object of the secondary pressure is to force the employer to enter into an agreement prohibited by § 8(e).

*Connell,* 421 U.S. at 646, 95 S.Ct. 1830 (Stewart, J., dissenting). Justice Stewart concluded from the legislative history that Congress made a deliberate choice in 1959 "in expanding the scope of § 303 to include a remedy for secondary pressure designed to force an employer to sign an illegal 'hot cargo' clause and in restricting the remedies for violation of § 8(e) itself to those available from the Board." *Connell,* 421 U.S. at 650, 95 S.Ct. 1830 (Stewart, J., dissenting).

In *Connell,* a general contractor brought suit against a local union seeking to void an agreement to which it was a party and which it was coerced by the union into signing. The general contractor's claims were based on antitrust law, rather than labor law. Although the facts and issues of *Connell* are strikingly different than those at issue here, Justice Stewart explained the required outcome had the situation in *Connell* been like that presented here:

> If Connell and Local 100 had entered into a purely voluntary 'hot cargo' agreement in violation of § 8(e), an injured nonunion mechanical subcontractor would have no § 303 remedy because the union would not have engaged in any § 8(b)(4) unfair labor practice. The subcontractor, however, would still be able to seek the full range of Board remedies for a § 8(e) unfair labor practice.

*Connell,* 421 U.S. at 649 n. 9, 95 S.Ct. 1830 (Stewart, J., dissenting).

Plaintiff in the present case urges a different interpretation of this court's jurisdiction. Plaintiff relies on *Connell*'s majority opinion for the proposition that this court has jurisdiction over violations of section 8(e) because the court can assert supplemental jurisdiction over collateral labor law issues. Plaintiff states that *Connell* emphasized that federal courts may decide labor law questions that emerge as collateral issues in suits brought pursuant to independent federal remedies. *Connell,* 421 U.S. at 626, 95 S.Ct. 1830. Plaintiff's reliance on this statement from *Connell* as providing a basis for this court's jurisdiction is misplaced.

First of all, the *Connell* plaintiff's claims were based on antitrust law rather than, as here, on section 303 of the NLRA.[8] Furthermore, the cases the *Connell* Court cites to support its proposition were decided within the context of claims brought under either antitrust statutes or under section 301 of the LMRA. As discussed above, section 301, unlike section 303, provides for district court jurisdiction over suits for violation of collective bargaining agreements and has been interpreted as allowing some leeway for district court review of section 8(e) violations. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 86, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982) (holding that, when brought under section 301, a federal court must entertain a section 8(e) defense when it is "raised by a party which § 8(e) was designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought."); *Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers Local 39,* 344 F.2d 107, 108 (2d Cir.1965) (holding that the district court correctly rejected union's argument that the NLRB had exclusive jurisdiction over

---

**8.** It is also notable that in *Connell* the plaintiff was a party to the disputed contract, the contract was not a collective bargaining

agreement, and the plaintiff was coerced by the union into signing the contract.

section 8(e) declaratory judgment claim "since the federal courts have concurrent jurisdiction in actions brought under section 301"); *see also* David A. Anderson, *Hot Cargo Enforcement After Kaiser Steel: A New Look at Section 8(e),* 1983 UTAH L. REV. 493, 501 (1983) (discussing expanded district court jurisdiction over section 8(e) claims when brought under section 301, noting however that "a court's jurisdiction under section 303 to decide section 8(e) issues is limited to cases where a labor organization has engaged in the strike inducement, restraint or coercion that is forbidden by section 303.").

Only one federal court has dealt directly with the question of district court jurisdiction over 8(e) claims when brought under section 303. *See Atchison, Topeka & Santa Fe Ry. Co. v. Locals Nos. 70, 85, & 315, of the Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers of Am.,* 511 F.2d 1193 (9th Cir.1975). In *Atchison,* plaintiff railroad sought relief in district court based upon certain provisions in a collective bargaining agreement between union locals and another employer which violated section 8(e). The district court dismissed the claim for lack of jurisdiction. On appeal, the plaintiff argued that the court should read the jurisdictional grant of section 303 as embracing within the grounds for district court jurisdiction not only section 8(b)(4) but also section 8(e). The Ninth Circuit rejected plaintiff's argument, reasoning as follows: "Congress is perfectly free to broaden the scope of [section 303] in the manner urged by plaintiff; this court is not free to do so. The court must presume that Congress, in its 1959 amendments adding Subsection [8(e)] to the NLRA, could have amended [section 303] with equal facility, had it chosen to do so." *Atchison,* 511 F.2d at 1195.

Other courts, in dicta, have come to the same conclusion reached by the Ninth Circuit in *Atchison* and by Justice Stewart in *Connell. See Shepard v. NLRB,* 459 U.S. 344, 351, 103 S.Ct. 665, 74 L.Ed.2d 523 (1983) (indicating that section 303 "provides a remedy only for violations of § 8(b)(4) of the Act, which, in turn, requires proof of coercion."); *Brown & Root, Inc. v. Louisiana State AFL–CIO,* 10 F.3d 316, 321 n. 4 (5th Cir.1994) ("[W]e note that section 303, which allows parties to sue for damages in federal district court, appears to be limited to violations of section 8(b)(4) and not to extend to violations of section 8(e).").

This court agrees that section 303 does not extend district court jurisdiction to claims arising out of pure violations of section 8(e). Rather, to fall within the scope of section 303, plaintiff must allege some violation of section 8(b)(4), which as noted above, requires coercive activity. Any complaint the plaintiff has concerning the validity of the Local 78/York collective bargaining agreement under section 8(e) belongs in front of the NLRB, the tribunal designated by Congress to hear such claims.

## III. CONCLUSION

Because this court lacks jurisdiction under section 303 over plaintiff's request for a declaratory judgment that the alleged "hot cargo" clause in the Local 78/York collective bargaining agreement is void and unenforceable, this court GRANTS defendants' motion to dismiss this claim. Plaintiff's sixth cause of action is therefore DISMISSED.